UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANNIE D. ELLISON, | Case No. 2:19-CV-1137 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| AMERICAN HOMES 4 RENT, LP, | |
| Defendant(s). | |

Presently before the court is defendant American Homes 4Rent's ("AH4R") motion to compel arbitration. (ECF No. 23). Plaintiff Annie Ellison filed a response (ECF No. 28), to which AH4R replied (ECF No. 31).

Also before the court is AH4R's motion to dismiss, or in the alternative, stay. (ECF No. 23). Ellison filed a response (ECF No. 28), to which AH4R replied (ECF No. 31).

**I.      Background**

The instant action arises from a disagreement over the validity of a contract between the parties to arbitrate employment-related disputes. (ECF Nos. 23, 28). The parties allege the following:

On April 10, 2016, Ellison submitted a signed application for employment to AH4R. (ECF No. 23). The application included an agreement to arbitrate "any controversy, dispute, or claim" between an employee of AH4R and AH4R or its affiliates/subsidiaries/etc. (ECF No. 23-3). AH4R subsequently sent an offer letter to Ellison, which she accepted on May 3, 2016. (ECF Nos. 23, 28). The offer letter stated that "this letter is not intended to be a contract and your employment is at-will" and that AH4R "uses arbitration to settle disputes and all employees are required to sign our arbitration agreement upon hire." (ECF No. 23-4).

**James C. Mahan**
**U.S. District Judge**

On May 22, 2016, Ellison electronically signed AH4R's arbitration agreement ("2016 arbitration agreement") through the AH4R University program, a computer-based training system. (ECF Nos. 23-5, 28). The 2016 arbitration agreement provides, in relevant part, that "Employee and Company agree that any controversy or claim arising out of or relating to Employee's employment with Company, shall be exclusively and finally settled by arbitration," and that "[t]his arbitration provision includes (but is not limited to) all claims" for unlawful discrimination (including race, color, religion, sex, and national origin). (ECF Nos. 23-5). The 2016 arbitration agreement also requires any arbitration proceedings to be held in Los Angeles, California and to be conducted pursuant to California Code of Civil Procedure 1283.05. *Id*.

On May 31, 2016, Ellison commenced employment with AH4R as a staff attorney. (ECF Nos. 23, 28). In April 2017, AH4R issued a revised arbitration agreement ("2017 arbitration agreement") and employee handbook. (ECF Nos. 23, 28). The 2017 arbitration agreement mirrors its 2016 counterpart in many regards—including the requirement that disputes related to unlawful discrimination be arbitrated—but there are also several revised terms. (ECF No. 23-9). Notably, the 2017 arbitration agreement's location provision was revised to require any arbitration to be conducted "in or near the city or town where Employee's employment services were performed, at the Company headquarters, or at any other location mutually agreed upon by Employee and Company or set by the AAA or arbitrator." *Id*.

The employee handbook references the 2017 arbitration agreement as follows: "At time of hire, you will be required to sign and return an arbitration agreement as a condition of employment." (ECF No. 28-4). The employee handbook also states that AH4R "reserves the right to change or revise policies, procedures, and benefits (other than the employment-at-will provision) without prior notice whenever we determine that such action is warranted" and that "[t]his handbook replaces all earlier handbooks and supersedes all prior or inconsistent policies, practices, and procedures." (ECF No. 28).

In order to receive a salary increase and monetary bonus, Ellison was required to acknowledge the 2017 arbitration agreement through the AH4R University program by January 5, 2018. (ECF No. 23, 23-6). Although Ellison disputes that she signed the 2017 arbitration

agreement (ECF No. 28), AH4R has submitted a "course activity summary" from the AH4R University program indicating that Ellison's unique login was used on January 5, 2018 to acknowledge the 2017 arbitration agreement (ECF No. 23-11).

Ellison initiated this action on June 28, 2019. (ECF No. 1). On July 10, 2019, Ellison filed an amended complaint against AH4R alleging two causes of action: (1) race discrimination in violation of Title VII and 42 U.S.C. § 1981; and (2) retaliatory discharge in violation of Title VII and 42 U.S.C. § 1981. (ECF No. 9).

Now, AH4R moves to compel arbitration of Ellison's claims. (ECF No. 23). AH4R also moves to dismiss, or in the alternative, stay Ellison's claims pending resolution of the arbitration. *Id*.

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract affecting interstate commerce. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A party to an arbitration agreement can invoke his or her rights under the FAA by petitioning federal courts to direct that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When courts grant a petition to compel arbitration, the FAA requires stay of litigation "until such arbitration has been had[.]" *Id*. at § 3.

The FAA embodies a clear policy in favor of arbitration. *AT&T Mobility*, 563 U.S. at 339. Courts must rigorously enforce arbitration agreements. *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA leaves no place for courts to exercise discretion, but instead mandates courts to enforce arbitration agreements. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

However, arbitration is a "matter of contract" and the FAA does not require a party to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quotes and citation omitted). When determining whether a party should be compelled to arbitrate claims: courts engage in a two-step process. *Chiron Corp. v.*

*Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. *Id.*

### III. Discussion

AH4R argues that Ellison agreed, on at least five separate occasions, to the terms of the arbitration agreement, which requires her to arbitrate her current claims against AH4R. (ECF No. 23). In particular, AH4R contends that Ellison acknowledged the 2017 arbitration agreement through the AH4R University program, and that the 2017 arbitration agreement is enforceable under Nevada law. *Id.*

Ellison responds that the 2016 arbitration agreement "is the only agreement [she] reviewed, executed, or otherwise acknowledged after accepting [AH4R's] offer of employment." (ECF No. 28). Ellison further responds that the 2017 arbitration agreement superseded the 2016 arbitration agreement, such that only the 2017 arbitration agreement remains operative. *Id.* In addition, Ellison contends that the 2017 arbitration agreement is illusory, and thus unenforceable under Nevada law. *Id.*

As a preliminary matter, the court finds that Ellison acknowledged the 2017 arbitration agreement. The entirety of Ellison's claim to the contrary relies on her affirmation that "she did not access, accept, acknowledge or agree to" AH4R's 2017 arbitration agreement. (ECF No. 28). The court is not persuaded by Ellison's affirmation. AH4R has provided a "course activity summary" from the AH4R University program indicating that Ellison's unique login was used to acknowledge the 2017 arbitration agreement (ECF No. 23-11), and Ellison has provided no colorable argument or evidence to the contrary.

Accordingly, Ellison is bound by the terms of the 2017 arbitration agreement unless that agreement is invalid or does not encompass Ellison's claims. *See Chiron Corp.*, 207 F.3d at 1130. The court will address each issue in turn.

a. *The 2017 arbitration agreement is valid and enforceable*

Ellison contends that the 2017 arbitration agreement is unenforceable based on the language of the employee handbook. (ECF No. 28). First, Ellison argues that the employee

handbook states that "[t]his handbook replaces all earlier handbooks and supersedes all prior or inconsistent policies, practices, and procedures," such that the 2016 arbitration agreement was superseded by the 2017 arbitration agreement. *Id*. Second, Ellison argues that the employee handbook states that AH4R "reserves the right to change or revise policies, procedures, and benefits (other than the employment-at-will provision) without prior notice whenever we determine that such action is warranted," such that the 2017 arbitration agreement is illusory and thus unenforceable. *Id*.

Ellison also argues that the 2017 arbitration agreement is unenforceable because there was no meeting of the minds as to the new revisions. *Id*. Specifically, Ellison points to the revised arbitration location provision, which provides that any arbitration must be conducted "in or near the city or town where Employee's employment services were performed, at the Company headquarters, or at any other location mutually agreed upon by Employee and Company or set by the AAA or arbitrator." (ECF No. 23-9).

Though the employee handbook purportedly reserves for AH4R the right to unilaterally revise the 2017 arbitration agreement, the agreement itself makes no mention of any right to change its terms. (*See* ECF No. 23-9). There is also no intent in the 2017 arbitration agreement to incorporate the employee handbook by reference, as the only mention of the employee handbook in the agreement is a header on the agreement's first page stating: "DURING YOUR EMPLOYEE ORIENTATION/ANNUAL HANDBOOK REVIEW (AS APPLICABLE), YOU WILL BE ASKED TO READ AND ACKNOWLEDGE [the 2017 arbitration agreement] THROUGH AH4R UNIVERSITY." *Id*.

Further, the employee handbook itself contains only a single reference to the agreement. (*See* ECF No. 28-4 ("At time of hire, you will be required to sign and return an arbitration agreement as a condition of employment.")). The employee handbook also expressly states that "the contents of this handbook are in no way intended to create an employment contract." *Id*.

In total, there has been no showing that the 2017 arbitration agreement incorporated the employee handbook by reference and there has been no showing that the employee handbook alone constitutes a separate contract. The 2017 arbitration agreement is thus unaffected by the

employee handbook, such that AH4R retained no right in the 2017 arbitration agreement to unilaterally modify its terms. Accordingly, the court finds that the 2017 arbitration agreement is not illusory.

Ellison's argument that there was no meeting of the minds as to the formation of the 2017 arbitration agreement is equally unavailing. The "course activity summary" from the AH4R University program indicates that Ellison opened and observed the 2017 arbitration agreement and assented to its terms. (ECF No. 23-11). Aside from the now-rejected contention that she did not acknowledge the 2017 arbitration agreement, Ellison provides no additional argument to refute her acknowledgement of, and assent to, the revised terms of the agreement.

The court therefore finds that the 2017 arbitration agreement constitutes a valid and enforceable arbitration contract.

*b. The 2017 arbitration agreement encompasses all of Ellison's claims against AH4R*

The 2017 arbitration agreement provides that the following claims must be submitted to arbitration:

> The claims which are to be arbitrated include, but are not limited to *any claim arising out of or relating to this Agreement or the employment relationship between Employee and the Company*, claims for wages and other compensation, claims for breach of contract (express or implied), claims for violation of public policy, wrongful termination, tort claims, *claims for unlawful discrimination and/or harassment* (including, but not limited to, race, religious creed, color, national origin, ancestry, physical disability, mental disability, gender identity or expression, medical condition, marital status, age, pregnancy, sex or sexual orientation, veteran status, veteran spousal status, gender identity and expression, breast feeding, genetic information, or genetic characteristic) to the extent allowed by law, and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance.

(ECF No. 23-9) (emphasis added). Ellison's race discrimination and retaliatory discharge claims both fall within the clear and unambiguous language of this provision, as both claims "aris[e] out of or relat[e] to this Agreement or the employment relationship between Employee and the Company." *Id.*

The court therefore finds that Ellison's claims must be submitted to arbitration. The court will accordingly grant AH4R's motion to compel arbitration. The court will also stay all litigation in this action in accordance with 9 U.S.C. § 3.

James C. Mahan
U.S. District Judge

- 6 -

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that AH4R's motion to compel (ECF No. 23) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that AH4R's motion to dismiss, or in the alternative, stay (ECF No. 23) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that this action be, and the same hereby is, STAYED pending the close of arbitration.

IT IS FURTHER ORDERED that the parties shall file a status report six months from the date of this order, and every six months thereafter, briefly indicating the progress of the arbitration.

DATED December 27, 2019.

_____
UNITED STATES DISTRICT JUDGE